IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Daniel L. Rittner, Sr.,           :

        Plaintiff,                :

    v.                            :     Case No. 2:06-cv-0471

Sidney Thrower, et al.,           :     JUDGE SARGUS

        Defendants.               :

<u>REPORT AND RECOMMENDATION</u>

    This prisoner civil rights case is before the Court on
defendant Jeffery Wolfe's motion for summary judgment and plaintiff
Daniel Rittner's request for the Magistrate Judge's recusal due to
alleged prejudice.  For the following reasons, the Court recommends
that the request for recusal be denied.  Additionally, the Court
recommends that the motion for summary judgment be granted and the
entire case be dismissed.

I.

    Preliminarily, the Court will address the apparent request for
the Magistrate Judge's recusal.  Mr. Rittner alleges that the
Magistrate is demonstrating "nepotism" to the defendants in
violation of his constitutional rights.  (Notice of Obj. to
Prejudice by Mag. Kemp (doc. #187) at p. 1).  Specifically, Mr.
Rittner requests the Court to "investigate" the alleged favoritism
in this case, which the Court construes as a motion for recusal.
(<u>Id.</u> at p. 2).

    A judge may not be removed from a case on grounds of bias
simply because a party is dissatisfied with rulings made by the
judge during the course of the case.  Rather, "the critical test is
whether the alleged bias 'stem[s] from an extrajudicial source and
result[s] in an opinion on the merits on some basis other than what
the judge learned from his participation in the case.'" <u>Wheeler v.</u>

Southland Corp., 875 F.2d 1246, 1251 (6th Cir.1989), quoting United
States v. Grinnell Corp., 384 U.S. 563, 583 (1965).  Mr. Rittner
has not alleged any extrajudicial source of bias, and his
dissatisfaction with the Magistrate Judge's handling of the case is
not an appropriate basis for recusal under this standard.
Consequently, the Court recommends that this request be denied.

                                   II.

Mr. Rittner, is a prisoner proceeding pro se.  Mr. Rittner
originally filed suit (Case No. 2:05-cv-1041) against Mr. Wolfe and
Sidney Thrower in this Court on November 17, 2005, claiming a
litany of alleged civil rights violations.  That case was
subsequently dismissed on May 24, 2006 for failure to exhaust
administrative remedies.

On June 19, 2006, Mr. Rittner refiled a complaint in this
Court against both Messrs. Wolfe and Thrower.  The other defendant,
Sidney Thrower, has not been severed in this case.  In this
complaint, Mr. Rittner specifies, among other things:

> As in the first filing in cause titled Rittner
> v. Thrower, 2:05 CV 1041 Plaintiff **did exhaust
> his administrative remedies.** This Court
> failed to construe the pleadings as the
> Plaintiff met the pleadings to be construed.
> Plaintiff **ONLY** complains of the acts of the
> Defendants Sidney Thrower ["Defendant" or
> "Thrower"] and Jeffery Wolfe ["Defendant" or
> "Wolfe"] of placing Plaintiff in segregation at
> Noble Correctiona Institution without
> justiciable cause, excuse or priviledge to do
> so and without due process in violation of
> Plaintiff's Constitutional rights which are
> clearly established under the **FIRST AND
> FOURTEENTH** Amendments.

(Compl. ¶4 (reproduced verbatim)).  Despite this statement, which
appears to limit the cause of action to Mr. Rittner's placement in
segregation at Noble Correctional Institution ("NCI"), Mr. Rittner
also claims that he was transferred to the Allen County

                                   2

Correctional ("ACI") Institution and placed in the "Maximum Security Mental Health Unit" in violation of the First and Fourteenth Amendments.

Mr. Wolfe filed a motion for summary judgment arguing, *inter alia*, that due process was not required prior to placing Mr. Rittner in segregation or the mental health unit; there was no First Amendment retaliation in this case; Mr. Rittner's claims are barred by the statute of limitations; Mr. Rittner suffered no physical injury as required by the PLRA; and that Mr. Wolfe is entitled to qualified immunity. The motion is fully briefed and ripe for adjudication.

                              III.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)(emphasis in original); <u>Kendall v. The Hoover Co.</u>, 751 F.2d 171, 174 (6th Cir.1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," <u>Anderson</u>, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. <u>Lashlee v. Sumner</u>, 570 F.2d 107, 111 (6th Cir.1978). Therefore, summary judgment will be granted "only

where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962); accord, County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir.1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 250.

> The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted. Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970) (footnote omitted); accord, Adams v. Union Carbide Corp., 737 F.2d 1453, 1455-56 (6th Cir.1984), cert. denied, 469 U.S. 1062 (1985). Inferences to be drawn from the underlying facts contained in such

4

materials must be considered in the light most favorable to the party opposing the motion. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962); <u>Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.</u>, 630 F.2d 1155, 1158 (6th Cir.1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. <u>Adickes</u>, 398 U.S. at 157-60; <u>Smith v. Hudson</u>, 600 F.2d 60, 65 (6th Cir.1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322. The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. <u>Anderson</u>, 477 U.S. at 251. As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 259 (1968)(footnote omitted).

IV.

Before reaching the substantive merits of the claims, the Court must first address the issue of whether Mr. Rittner's claims

5

are barred by the statute of limitations.  Because Congress did not write a statute of limitations into § 1983, it is up to the courts "to 'borrow' the most suitable statute or other rule of timeliness from some other source." Harris v. City of Canton, 725 F.2d 371, 375 (6th Cir.1984)(citing DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 158 (1983)).  Generally, federal courts apply the state statute of limitations governing the most analogous cause of action.  Id. (citing DelCostello, 462 U.S. at 158).  In Ohio, the statute of limitations in a § 1983 case is two years. Ohio Rev. Code § 2305.10; Browning v. Pendleton, 869 F.2d 989, 990 (6th Cir.1989)(en banc); Banks v. City of Whitehall, 344 F.3d 550, 553 (6th Cir.2003).

Although state law governs the length of the limitations period in § 1983 actions, federal law governs the question of when the limitations period begins to run.  Harris, 725 F.2d at 372-73. The limitations period begins to run, therefore, when the plaintiff, exercising reasonable diligence, knows or has reason to know of the injury which is the basis of the action.  Id. at 273. In Ohio, however, the Savings Statute may "save" a § 1983 action from being barred from the two- year statute of limitations period. Id. at 375-76 (applying the Ohio Savings Statute to a § 1983 case that was previously dismissed without prejudiced but refiled within the one-year window); Ohio Rev. Code § 2305.19.  Although the Court of Appeals does not appear to have applied the Savings Statute to a § 1983 claim in any published opinion since Browning v. Pendleton was decided, this Court concludes that it does apply here.  Harris, 725 F.2d at 375-76, applied it to claims arising under, inter alia, § 1983, and in Harris v. United States, 422 F.2d 322 (6th Cir.2005), the court applied it to a Bivens claim.  At least one unpublished opinion, Bowles v. City of Cleveland, 129 Fed.Appx. 239 (6th Cir.2005)(unpublished), states that the Savings Statute does not apply to federal claims, but, for the same reasons set forth in

6

Fuller v. Cuyahoga Metro. Housing Auth., No. 1:06CV2093, 2007 WL 218724, *4 n. 21 (N.D. Ohio January 25, 2007)(unpublished), this Court concluded that Bowles does not accurately state the law. See also Coleman v. Dept. of Rehab. and Corr., 46 Fed.Appx. 764 (6th Cir.2002)(unpublished). Thus, the Court will apply the Savings Statute to Mr. Rittner's claims.

The Ohio Savings Statute states:

> In an action commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed, or if the plaintiff fails otherwise than upon the merits, and the [time] limit for the commencement of such action at the date of reversal or failure has expired, the plaintiff, or, if he dies and the cause of action survives, his representatives may commence a new action with one year after such date.

Ohio Rev. Code § 2305.19. In order for the Savings Statute to apply, four criteria must be met: (1) the action must have been commenced or attempted to be commenced within the applicable period of limitations; (2) the failure of the plaintiff in the action was otherwise than on the merits; (3) at the date of such failure, the time limit for commencing the action had expired; and (4) the plaintiff refiled the action within one year of such failure. Cero Realty Corp. V. American Manufacturing Mutual Ins. Co., 171 Ohio St. 82, 85 (1960); accord Harris, 725 F.2d 375-76.

In the instant case, the complaint alleges the following chronological events: (1) Mr. Rittner was placed in segregation on November 20, 2003 and (2) transferred from NCI to ACI and placed in the "maximum security mental health unit" on December 2, 2003. Under the applicable two-year statute of limitations period, Mr. Rittner had until November 20, 2005 to file a § 1983 action for these alleged constitutional violations.

According to the record, Mr. Rittner filed his first complaint (Case No. 2:05-cv-1041) against Messrs. Wolfe and Thrower on

7

November 17, 2005 and that case was dismissed without prejudice for failure to exhaust administrative remedies on May 24, 2006. Subsequently, Mr. Rittner refiled his complaint in this case on June 19, 2006.

First, Mr. Rittner commenced his first cause of action within the applicable period of limitations on November 17, 2005. Second, Mr. Rittner's complaint was dismissed for failure to exhaust administrative remedies, which is a dismissal other than on the merits. Third, at the date of dismissal, May 24, 2006, the time limit for commencing the action had expired. Finally, Mr. Rittner refiled this case prior to May 24, 2007. Thus, under the Ohio Savings Statute, Mr. Rittner is within the statute of limitations window. The Court will now examine the substantive merits of Mr. Rittner's allegations.

V.

As noted above, there appear to be five claims in this case: (1) Mr. Rittner's placement in segregation in violation of the Fourteenth Amendment; (2) Mr. Rittner's transfer from NCI to ACI in violation the First and Fourteenth Amendments; and (3) Mr. Rittner's placement in the "Maximum Security Mental Health Unit" in violation of the First and Fourteenth Amendments.

*Segregation*

Mr. Rittner alleges that he was placed in segregation at NCI "**without** justiciable cause, excuse or privledge ... ." (Compl. ¶4 (reproduced verbatim)). The United States Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (1) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (2) providing the inmate with a written statement of evidence relied on and the reasons for the disciplinary action; and (3) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense. Wolff v. McDonnell, 418 U.S. 539, 63-69 (1974).

The right to call witnesses or present evidence, however, is not
absolute.  <u>Id.</u> at 566.  The United States Supreme Court stated:

> [W]e must balance the inmate's interest[s]
> against the needs of the prison, and some
> amount of flexibility and accommodation is
> required.  Prison officials must have the
> necessary discretion to keep the hearing
> within reasonable limits and to refuse to call
> witnesses that may create a risk of reprisal
> or undermine authority, as well as to limit
> access to other inmates to collect statements
> or to compile other documentary evidence.
> Although we do not prescribe it, it would be
> useful for the Committee to state its reason
> for refusing to call a witness, whether it be
> for irrelevance, lack of necessity, or the
> hazards presented in individual cases.

<u>Id.</u>

The holding in <u>Wolff</u> was limited in <u>Sandin v. Conner</u>, 515 U.S.
472 (1995).  In <u>Sandin</u>, the Court examined whether a Hawaiian
inmate was afforded constitutional due process when he was placed
in segregation following a disciplinary hearing where the inmate
was prohibited from calling witnesses.  The Court opined:

> Following *Wolff*, we recognize that States may
> under certain circumstances create liberty
> interests which are protected by the Due
> Process Clause.  But these interests will be
> generally limited to freedom from restraint
> which, while not exceeding the sentence in
> such an unexpected manner as to give rise to
> protection by the Due Process Clause by its
> own force, nonetheless imposes atypical and
> significant hardship on the inmate in relation
> to the ordinary incidents of prison life.
>
> ***
>
> The punishment of incarcerated prisoners, on
> the other hand, serves different aims than
> those found invalid in *Bell* and *Ingraham*.  The
> process does not impose retribution in lieu of
> a valid conviction, nor does it maintain
> physical control over free citizens forced by

law to subject themselves to state control over the educational mission. It effectuates prison management and prisoner rehabilitative goals. Admittedly, prisoners do not shed all constitutional rights at the prison gate, but lawful incarceration brings about the necessary withdraw of limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.

This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the high misconduct charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction.

***

Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record

10

or to grant parole in its absence.

Id. at 483-87 (internal citations, brackets, quotations and footnotes omitted). Sandin changed a federal court's focus from analyzing state laws to determine if they create a liberty interest, see, e.g., Hewitt v. Helms, 459 U.S. 460 (1983), to determining if the penalty imposed creates an atypical and significant hardship to trigger due process protections, Sandin, 515 U.S. at 484. Courts within this Circuit have consistently held that placement in segregation is not an atypical and significant hardship. See, e.g., Sandin, 515 U.S. at 487 (placement in segregated confinement did not violate due process); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir.1995)(placement in administrative confinement did not violate due process); Mackey v. Dyke, 111 F.3d 460, 463 (6th Cir.1997)(same); Bennett v. Smith, 110 Fed.Appx. 633, 634-35 (6th Cir.2004)(unreported)(same); Moore v. Wilkinson, 52 Fed.Appx. 253, 255 (6th Cir.2002)(unreported)(same).

It appears that Mr. Rittner was placed in segregation on November 20, 2003. Beyond this, Mr. Rittner has failed to demonstrate, or even allege, how this was an atypical and significant hardship. Accordingly, Mr. Rittner's due process rights were not violated when he was placed in segregation on November 20, 2003. Thus, the Court recommends that summary judgment be granted on this claim.

### Transfer from NCI to ACI

The Due Process Clause does not require a prisoner to receive a hearing prior to transfer. Meachum v. Fano, 427 U.S. 215 (1976). The Meachum Court noted:

> The Due Process Clause by its own force forbids the State from convicting any person of [a] crime and depriving him of his liberty interest without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to

11

the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. *** The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons.

***

Transfers between institutions, for example, are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and welfare of the inmate. Yet under the approach urged here, any transfer, for whatever reason, would require a hearing as long as it could be said that the transfer would place the prisoner in substantially more burdensome conditions that he had been experiencing. We are unwilling to go so far.

Id. at 225-26.

Additionally, in order to make out a successful First Amendment retaliation claim, an inmate must make a *prima facia* case proving that (1) the inmate engaged in protected conduct; (2) an adverse action was taken against the inmate that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated, at least in part, by the inmate's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999). Once an inmate establishes a *prima facia* case for retaliation in violation of the First Amendment, the burden shifts to the defendants to prove that the same action would have been taken in the absence of protected activity. Id. at 399. In general, it is difficult for an inmate

12

to establish the first prong of the First Amendment retaliation
analysis because prison regulations are allowed to infringe on
inmate's rights so long as they are rationally related to a
legitimate penological interest. Id. at 395 (citing Turner v.
Safely, 482 U.S. 78 (1987)). Thus, if an inmate violates a
legitimate prison regulation, that inmate is not engaged in
protected conduct and fails to establish a retaliation violation.
Id. Additionally, the Court of Appeals has stated, in numerous
unpublished opinions, that the transfer from one prison to another
prison cannot constitute a First Amendment retaliation violation
because transferring an inmate would not deter a person of ordinary
fairness from the exercise of his First Amendment rights. Smith v.
Yarrow, 78 Fed.Appx. 529, 543 (6th Cir. Oct. 20, 2003)
(unpublished)(citing Mandela v. Campbell, 181 F.3d 102, 1999 WL
357825 (6th Cir. May 26, 1999)(unpublished); Goss v. Myers, 208
F.3d 213, 2000 WL 125905 (6th Cir. Jan. 28, 2000)(unpublished);
Goddard v. Kentucky Dept. of Corr., 205 F.3d 1340, 2000 WL 191758
(6th Cir. Feb. 7, 2000)(unpublished); and Herron v. Campbell, 198
F.3d 245, 1999 WL 1045158 (6th Cir. Nov. 9, 1999)(unpublished)).

Mr. Rittner argues that he was transferred from NCI to ACI in
violation of the First and Fourteenth Amendments. This allegation
is rebutted by Mr. Wolfe's affidavit. It states, in pertinent
part:

> After completing a request for protective
> control and an inmate confidential statement,
> on November 21, 2003, Inmate Rittner was
> placed in security control pending
> investigation and a protective control
> hearing.
>
> On or about November 21, 2003, a protective
> control screening was conducted and the
> protective control committee found that,
> although they did not believe Inmate Rittner
> was in immediate danger, if his present
> behavior continued they believed that the

13

inmate population may carry through with their threats to harm Inmate Rittner.

The protective control committee recommended an institutional transfer in lieu of placement in protective control.

The committee further explained in a memo written to me that they believed Inmate Rittner needed to be transferred from NCI to escape the climate of danger that he had created from himself [sic].

I approved the committee's recommendation that Inmate Rittner be transferred to another institution for his own safety in lieu of placement in protective control.

Inmate Rittner was subsequently transferred from NCI to ACI.

Inmate Rittner was initially placed in the residential treatment unit at ACI pursuant to the recommendation of NCI's mental health supervisor.

(Aff. of Jeffery Wolfe at ¶¶ 5-11). These allegations are contradicted by affidavit or deposition.

As indicated, the reach of the Due Process Clause does not extend to inmates that are transferred from one prison to another. Further, an inmate cannot make a retaliation claim under the First Amendment simply because that inmate is transferred because transferring prisons would not deter a person of ordinary fairness from exercising his First Amendment rights. According to Mr. Wolfe's affidavit, Mr. Rittner requested prison protection because he feared for his safety, and it appears that he was transferred for those reasons. Thus, because no genuine issues of material fact exist when analyzing these claims, and because as a matter of law Mr. Rittner cannot maintain claims under the First and Fourteenth Amendment for transferring prisons in this context, the Court recommends granting summary judgment to Mr. Wolfe on these

14

claims.

*Placement in "Maximum Security Mental Health Unit"*

Mr. Rittner alleges that he was unlawfully committed to a mental hospital when he transferred from NCI to ACI. For support, he cites <u>Vitek v. Jones</u>, 445 U.S. 480 (1980). In <u>Vitek</u>, the Supreme Court upheld a procedural due process challenge to a Nebraska law that authorized the transfer of inmates "suffer[ing] from a mental disease or defect" from a state prison to a mental hospital for mandatory treatment. <u>Vitek</u>, 445 U.S. at 483-84. The Court held that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as a treatment for mental illness, constitute the kind of deprivations of liberty that requires procedural protections." <u>Id.</u> at 494. The due process liberty interest in <u>Vitek</u> is the involuntary transfer from prison to a mental hospital and being subjected to mandatory mental behavior modification. <u>Dean v. McWherter</u>, 70 F.3d 43, 45 (6th Cir.1995); <u>see also</u> <u>Washington v. Harper</u>, 494 U.S. 210, 221-22 (1990)(liberty interest in being protected from the involuntary administration of pyschotropic drug).

Nowhere in the record does evidence demonstrate that this case involves the involuntary transfer from a prison to a mental hospital; nor does it involve subjecting a person to mandatory behavior modification. Rather, this case involves Mr. Rittner's transfer from NCI to ACI (neither prison houses the Ohio Department of Rehabilitation and Correction's mental and psychiatric unit) and being placed "in the residential treatment unit at ACI pursuant to the recommendation of NCI's mental health supervisor." (Aff. of Jeffery Wolfe at ¶ 11).

Because Mr. Rittner was not involuntarily transferred to a mental hospital and was not involuntarily subjected to behavior

15

modification or involuntarily given psychotic medication, this Court concludes that Vitek is inapposite.  Instead, the Court will analyze this allegation under Sandin, *surpa*.  Based on Sandin and its progeny, the Court concludes that placement in a residential treatment facility is not a significant and atypical hardship. Given these circumstances, the Court concludes that placement in the residential treatment unit is not a departure from the basic conditions of prison life.  Moreover, it is not an atypical and significant hardship.  Thus, there can be no violation of the Due Process Clause.

The Court also concludes that being placed in the residential treatment unit at ACI did not violate Mr. Rittner's First Amendment rights because Mr. Rittner failed to satisfy the second and third prong of Thaddeus-X.  In discussing the level of conduct necessary "to deter a person of ordinary firmness," the Court of Appeals stated:

> We emphasize that while certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment.

Thaddeus-X, 175 F.3d at 398.  "[S]ince there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be actionable."  Id. at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982)).  A constitutional tort, however, requires that an inmate suffer an injury, and it would "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ... ." Id.

16

In the complaint, Mr. Rittner alleges that placement in the residential treatment center at ACI was an adverse action because he was denied access to courts. (Compl. ¶¶ 26-27). However, there is no evidence that Mr. Rittner was subjected to anything that this Court could construe from preventing a person of ordinary firmness from exercising his First Amendment rights. Instead, the record is clear that Mr. Rittner has filed over 100 grievances at ACI since December 2003. (Aff. of John Moore at ¶4). Additionally, there have been over sixty motions filed by Mr. Rittner in this case. This evidence is uncontradicted by Mr. Rittner. In fact, it is the only evidence in the record pertaining to this claim. Cf. Thomas v. Eby, ___F.3d___ (6th Cir.2007)("First, the issue is whether a person of ordinary firmness would be deterred, not whether [the plaintiff] himself actually was deterred"). Besides bald allegations that are not supported by evidence, see Fed.R.Civ.P. 56(e)("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"), nowhere in the record does Mr. Rittner provide any evidence to the contrary. Accordingly, with this evidence, a reasonable trier of fact could not conclude that placement in the residential treatment unit would deter a person of ordinary firmness from exercising his rights. See, e.g., Walker v. Mich. Dep't of Corrections, 128 Fed.Appx. 441, 446 (6th Cir.2005)(unpublished)(placement on modified access was not an "adverse action" because inmate could continue to file grievances); Jackson v. Madery, 158 Fed.Appx. 656, 660 (6th Cir.2005) (unpublished)(same).

VI.

Based on the foregoing, the Court RECOMMENDS that the apparent

17

request for recusal (doc. #187) be DENIED. The Court also RECOMMENDS that Mr. Wolfe's motion for summary judgment (doc. #140) be GRANTED and the case be DISMISSED WITH PREJUDICE. Additionally, because the same claims are asserted against Mr. Thrower, the Court RECOMMENDS that all claims asserted against him be DISMISSED as well because, if genuine issues of material fact do not exist in the claims against Mr. Wolfe, they will not exist in the claims against Mr. Thrower. See, e.g., Sisk v. Kubik, 230 F.3d 1364, n. 1 (8th Cir.2000) (unpublished)("The only notice Plaintiff had that the district court was going to dismiss one of the nurses for lack of service of process was a recommendation to that effect in the Magistrate Judge's report. But in any event, the claim against the dismissed nurse fails for the same reason as it fails against the nurse to whom summary judgment was granted")(internal citations omitted); Alexander v. Forr, No. 3:CV-04-0370, 2006 WL 2796412, n. 1 (M.D. Pa. Sept. 27, 2006)("Because it appears that the Defendants not served with process have participated in this litigation through counsel, and the analysis of the claims against them is the same as the analysis applied with respect to other Defendants, it is appropriate to decide whether all Defendants are entitled to summary judgment"). Mr. Rittner is free to argue, should he file objections to this Report and Recommendation, that different evidence would apply to his claims against Mr. Thrower and that summary judgment on those claims would therefore not be appropriate. Finally, because of this Report, the Court further RECOMMENDS that all other pending motions be deemed as MOOT.

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions

of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge